862 A.2d 1026

**Stephen TAYLOR**

v.

**HARFORD COUNTY DEPARTMENT OF SOCIAL SERVICES.**

**No. 51, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 9, 2004.

214

Mark B. Martin (Law Offices of Mark B. Martin, P.A., on brief), Baltimore, for appellant.

Sandra Barnes, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

This case arises from a January 2003 finding of the Harford County Department of Social Services ("HCDSS"), appellee, that Stephen Taylor, appellant, was responsible for "indicated" child physical abuse as a result of his kicking a footstool that struck his 12–year–old daughter in the face, injuring her. Appellant appealed the HCDSS decision and, on July 15, 2003, a hearing was held before an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings. On August 1, 2003, the ALJ issued his decision, which upheld the decision of HCDSS.

Appellant thereafter petitioned the Circuit Court for Harford County for judicial review of the final administrative decision as provided by Md.Code (1984, 1999 Repl.Vol.), § 10–222 of the State Government Article. On February 5, 2004, the circuit court affirmed the final administrative decision. On March 5, 2004, appellant noted an appeal to the Court of Special Appeals. On August 25, 2004, prior to consideration by the Court of Special Appeals, we issued a Writ of Certiorari. *Taylor v. Social Services,* 382 Md. 688, 856 A.2d 724 (2004).

Appellant presents one question for our review:

"I. Did the Maryland legislature when it adopted [Md. Code (1984, 1999 Repl.Vol., 2004 Supp.), §§ 5–701 *et seq.* of the Family Law Article] and COMAR 07.02.07 *et seq.* intend that an accidental or unintentional injury caused to a child by a parent or caregiver would be considered child abuse?" [Alteration added.]

The ALJ did not examine appellant's conduct as to whether it was reckless or not, but instead based his conclusion that child physical abuse had occurred because appellant had intentionally kicked the footstool and that under a foreseeability analysis that intent to kick the footstool was the equivalent of an intention to injure and thus met the "intent" standard of the statute and regulation. We hold that where an act by a parent or caregiver is injurious to that person's child, and the injury was unintentional, under Title 5 of the Family Law Article and COMAR 07.02.07.12, the injurious act should not constitute "indicated" child physical abuse unless it can be shown to have been reckless conduct. Accordingly, we vacate and remand to the ALJ for further consideration consistent with this opinion.

## I. Facts

### A. The Alleged Abuse Incident and Subsequent HCDSS Investigation

On November 13, 2002, HCDSS received an allegation of suspected child physical abuse involving the 12–year–old daughter of appellant, "L." On November 14, 2002, in response to this report, HCDSS had one of its licensed social workers, Ms. Geryl Haberkam, visit with appellant's family pursuant to an investigation of the alleged child abuse.

During her visit with appellant's family,[1] Ms. Haberkam was able to interview appellant's wife and four children, including "L," the child who allegedly had been abused. Based upon these interviews, Ms. Haberkam was able to piece together the following sequence of events that eventually led to "L's" injuries.

On the afternoon of November 10, 2002, while appellant was attempting to take a nap on a couch in his home, "L" approached him and asked him to help her with a problem she

---

1. At the time of Ms. Haberkam's visit on November 14, 2002, appellant was in Seattle, Washington for business purposes and unable to meet with the social worker.

was having with a computer. Appellant told "L" that she would have to wait until after he had finished his nap. While he was still in the midst of his nap, "L" for a second time approached him about fixing the computer problem. Appellant once again told her that she would have to wait, admitting that this time he "raised his voice and yelled at her." Later that afternoon, apparently unwilling to wait further, "L" woke appellant for a third time, once more asking him for his help. Appellant, who had by this time grown irritated at his daughter, got up from the couch and told her that she would have to wait until he finished his nap. While telling "L" this, "to accent his point," appellant kicked a footstool that was in front of the couch.[2] He had intended to kick the footstool into the couch but instead the kick propelled the footstool over the couch and into the air, where it eventually collided with his daughter, who happened to be standing behind the couch. The footstool hit "L" in the face, causing her nose to bleed and her jaw to be sore.

Upon seeing that his daughter had been injured by his act of kicking the footstool, appellant tended to her injuries and then accompanied her to Franklin Square Hospital, where she was further treated for her injuries. She eventually received three stitches to her nose and was treated for abrasions to the left side of her face.

Ms. Haberkam attempted to meet with appellant to discuss what had occurred, leaving a message for appellant to contact her when he returned from his business trip. Appellant initially did schedule to meet with the social worker on November 19, 2002, but later elected not to meet with her on advice from his attorney.

---

**2.** Appellant claims that his action of kicking the footstool was akin to slamming his fist on a table, *i.e.,* as he puts it, to "drive the point home." Throughout the entirety of the administrative and court proceedings, appellant has always maintained that while he did intend to kick the footstool, he did not intend for the injurious consequences of that act.

At the conclusion of her investigation, Ms. Haberkam made a finding of "indicated" child abuse.[3] On January 29, 2003, HCDSS informed appellant of this finding and of his right to a contested administrative hearing.[4] Appellant thereafter exercised his right to a contested hearing under § 5–706.1(b) of the Family Law Article.

### B. The Administrative Hearing

On July 15, 2003, a contested case hearing was held before an ALJ from the Office of Administrative Hearings. The issues as presented to the ALJ were "whether the finding of indicated child physical abuse is correct, and whether the Appellant is properly identified as the person responsible for the indicated child physical abuse" (alteration added). During

---

3. Md.Code (1984, 1999 Repl.Vol., 2004 Supp.), § 5–701(m) of the Family Law Article defines "indicated," in relation to the finding in a child physical abuse investigation, as meaning "a finding that there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur."

Likewise, COMAR 07.02.07.12A, a regulation designed to provide guidance in child abuse determinations, states in pertinent part:
".12 **Disposition of Investigation of Suspected Child Abuse.**
A. Indicated Child Abuse.
(1) Physical Abuse Other than Mental Injury. Except as provided in § A(3) of this regulation, a finding of indicated child physical abuse is appropriate if there is credible evidence, which has not been satisfactorily refuted, that the following four elements are present:
(a) A current or prior physical injury;
(b) The injury was caused by a parent, caretaker, or household or family member;
(c) The alleged victim was a child at the time of the incident; and
(d) The nature, extent, and location of the injury indicate that the child's health or welfare was harmed or was at substantial risk of harm."

4. The January 29, 2003 letter that HCDSS sent to appellant specifically stated:
"The child abuse investigation which began on 11/13/02 and has been completed with a finding of 'indicated' in accordance with the provisions of the Family Law Article 5–701[] and COMAR 07.02.07.12(A). As a result of this investigation [appellant] is identified as an alleged child abuser in that it is more likely than not that he caused ['L'] to sustain a bruised left cheek and lacerated nose, which required stitches, when he kicked the stool during an angry outburst." [Alterations added.]

her testimony at the hearing, Ms. Haberkam reiterated the facts as set forth in her report concerning the November 14, 2002 investigatory visit to appellant's home. HCDSS also submitted into evidence Ms. Haberkam's interview worksheets and notes from the visit, digital photographs of "L's" injuries, and the November 10, 2002 medical report from Franklin Square Hospital concerning "L's" injuries.

Appellant also testified at the ALJ hearing, claiming that he had only kicked the footstool out of frustration with his daughter and that he had never intended for it to strike her in the face, stating that, in his mind, "it was physically impossible that the stool could clear the couch." Kevin Cooper, an acquaintance of appellant, testified on appellant's behalf, describing appellant's extensive charity work and commenting on appellant's parenting skills, which Mr. Cooper believed to be impeccable.[5]

The ALJ ruled that HCDSS's finding that appellant was responsible for "indicated child physical abuse" was proper, stating that:

"[HCDSS] argues that the Appellant's action constitutes 'indicated child abuse.' It maintains that the Appellant intentionally kicked the stool in the direction of ['L'], and *it is immaterial whether the Appellant intended to hit ['L'] with the stool.* The Appellant counters that his behavior was an accident, under COMAR 07.02.07.12C(2)(a)(i), and therefore child abuse should be ruled out. *I agree with [HCDSS].*

"The Appellant acknowledges that he was angry with ['L'] when he kicked the stool and that he intended to teach her a lesson in manners. It was certainly foreseeable that when he kicked the stool in her direction, the stool could have

---

**5.** The ALJ correctly noted that Mr. Cooper's testimony was not particularly relevant to the specific child abuse inquiry before the ALJ, as "Mr. Cooper did not witness the incident on November 10, 2002.... The inquiry here is not specifically whether the Appellant is a good person or even a good parent, but whether he is responsible for conduct that constituted indicated child abuse."

struck ['L']. She was behind the sofa but a short distance away.

"The definition of 'abuse' under § 5–701(b)(1) [of the Family Law Article] does not require intent to harm. The regulations set forth in COMAR 07.02.07.12 also do not excuse the Appellant from responsibility for the unintended but foreseeable consequences of his intended act. The Appellant was angry with ['L'], he intentionally kicked the stool toward ['L'], and the stool struck her in the face. This was not an accident under COMAR 07.02.07.12C(2)(a)(i).

"The uncontroverted facts establish that there was a current physical injury, to ['L's'] face. COMAR 07.02.07.12A(1)(a). The injury was caused by the Appellant, her father. COMAR 07.02.07.12A(1)(b). ['L'] was twelve years old and under the age of eighteen. COMAR 07.02.07.12A(1)(c). She was actually harmed because the stool damaged her nose, swelled her jaw and left a mark on her cheek. In addition, she faced substantial risk of harm because the blow occurred near her eyes, brain and other vital organs. COMAR 07.02.07.12A(1)(d). All of the elements of indicated child abuse were met.

. . .

"Based on the above Findings of Fact and Discussion, I conclude as a matter of law that [HCDSS] has established by a preponderance of the evidence that the finding of indicated child physical abuse is supported by credible evidence and is consistent with the law. . . . I further conclude that [HCDSS] has established by a preponderance of the evidence that the Appellant is an individual responsible for indicated child physical abuse.

"I further conclude, as a matter of law, that [HCDSS] may identify the Appellant as an individual responsible for indicated child physical abuse in a central registry." [Alterations added.] [Emphasis added.] [Some citations omitted.]

Appellant thereafter appealed the final decision of the ALJ to the Circuit Court for Harford County. On February 5, 2004, the circuit court affirmed the decision of the ALJ.

## II. Standard of Review

In the recent case of *Charles County Dep't of Social Servs. v. Vann,* 382 Md. 286, 855 A.2d 313 (2004), this Court described the appropriate standards of judicial review of the final decision of an administrative agency. We stated:

"As a court sitting in judicial review of an administrative agency decision, this Court reviews the decision in the same posture as that of the courts below. That is to say, we reevaluate the decision of the agency under the same statutory standards as would the circuit court, and we do not employ those standards to reevaluate the decision of the circuit or intermediate appellate court. *See Division of Labor v. Triangle General Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001); *Dep't of Health v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051, 1060 (2001) (noting that it is the final decision at the administrative level, not the decision of the previously reviewing court, which is the focus of each level of judicial review).

"Under our holding in *C.S.*[*v. Prince George's County Dep't of Social Servs.,* 343 Md. 14, 680 A.2d 470 (1996)], a challenge to the entry of one's name in a central registry as an 'indicated child abuser' pursuant to [ ] § 5–701 [of the Family Law Article] is a contested case within the meaning of the Maryland Administrative Procedure Act, Md.Code (1984, 1999 Repl.Vol., 2003 Cum.Supp.), § 10–202(d)(1) of the State Government Article. *See Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Authority,* 323 Md. 641, 594 A.2d 1115 (1991). As a contested case in which the agency was acting in its quasi-judicial capacity— as opposed to 'quasi-legislative' agency actions, for which a wholly different set of administrative law principles apply, *see* [ ] § 10–125 [of the State Government Article]; *Fogle v. H & G Restaurant, Inc.,* 337 Md. 441, 654 A.2d 449 (1995)—

judicial review is governed by [ ] § 10–222 [of the State Government Article].

"[ ] Section 10–222(h) [of the State Government Article] sets forth standards of judicial review over agency decisions in contested cases and varies those standards depending on the type of agency determination under scrutiny. *See Spencer v. Board of Pharmacy*, 380 Md. 515, 846 A.2d 341 (2004). With regard to agency factual determinations, the standard of review is whether the finding is 'unsupported by competent, material, and substantial evidence in light of the entire record as submitted,' also known as substantial evidence review. [ ] Section 10–222(h)(3)(v) [of the State Government Article]. Under substantial evidence review of an agency's factual findings, a court is limited to ascertaining whether a reasoning mind could have reached the same factual conclusions reached by the agency on the record before it. *Board of Physician v. Banks*, 354 Md. 59, 67–68, 729 A.2d 376, 380–81 (1999).

"With regard to agency legal conclusions, judicial review is less deferential to the agency. When an agency makes 'conclusions of law' in a contested case, the APA permits the court, on judicial review, to decide the correctness of the agency's conclusions and to substitute the court's judgment for that of the agency's. [ ] Section 10–222(h)(3)(i)–(iv) [of the State Government Article]; *Total Audio–Visual Systems, Inc. v. Dep't of Labor*, 360 Md. 387, 394, 758 A.2d 124, 127–28 (2000). Even with conclusions of law, however, an agency's legal interpretation of the statute it administers or of its own regulations is entitled to some deference from the courts. *See Jordan v. Hebbville*, 369 Md. 439, 450, 800 A.2d 768, 775 (2002); *MTA v. King*, 369 Md. 274, 288–89, 799 A.2d 1246, 1254 (2002).

"Other agency decisions fall within categories that are neither legal conclusions nor factual findings, *see, e.g., Spencer*, 380 Md. 515, 846 A.2d 341 (explaining judicial review over discretionary functions of the agency), and some fall within both. These latter sort commonly are known as 'mixed questions of law and fact' or applications of law to

facts: The agency has correctly stated the law and its fact-finding is supported by the record, but the question is whether it has applied the law to the facts correctly. When the agency decision being judicially reviewed is a mixed question of law and fact, the reviewing court applies the substantial evidence test, that is, the same standard of review it would apply to an agency factual finding. *Pollock v. Patuxent,* 374 Md. 463, 469 n. 3, 823 A.2d 626, 630 n. 3 (2003); *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 837–38, 490 A.2d 1296, 1302–03 (1985); *Kohli v. LOOC, Inc.,* 103 Md.App. 694, 654 A.2d 922 (1995), *rev'd in part on other grounds and remanded,* 347 Md. 258, 701 A.2d 92 (1997); *Strother v. Board of Education,* 96 Md.App. 99, 623 A.2d 717 (1993)."

*Vann,* 382 Md. at 294–96, 855 A.2d at 318–19 (alterations added) (footnote omitted).

The present appeal, as briefed before this Court, is predicated solely upon whether the ALJ, in his determination as to whether appellant was responsible for indicated child physical abuse, applied the correct legal standard in reaching his conclusion that appellant was responsible for the abuse under the applicable statutes and regulations. It is therefore neither a review of the agency's factual determinations nor can it be said to be a review of a "mixed question of law and fact." It is purely a legal question. The facts that led to "L" being injured are undisputed. Therefore, we shall proceed to review the agency's determination *de novo.*

### III. Discussion

Appellant contends that his act of kicking the footstool is not meant to be considered child physical abuse under Title 5 of the Family Law Article or the applicable COMAR regulations. Appellant argues that although he did intend to kick the footstool, the fact that the resulting injury to his daughter was unintentional removes his act from the realm of child abuse. Therefore, in order to examine appellant's claim, we must initially analyze the pertinent statutes and regulations that define what child physical abuse *is* and what it *is not.*

Section 5–701 (b) of the Family Law Article defines "abuse," as it pertains to "Child Abuse and Neglect," as:

"(1) the physical or mental injury of a child by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the child's health or welfare is harmed or at substantial risk of being harmed; or

(2) sexual abuse of a child, whether physical injuries are sustained or not."

Under § 5–701 of the Family Law Article, there are three distinct outcomes to an investigation into whether child abuse has occurred. First, a finding of "indicated" means "that there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur." Section 5–701(m) of the Family Law Article. Second, a finding of "ruled out" means "that abuse, neglect, or sexual abuse did not occur." Section 5–701(v) of the Family Law Article. Third, a finding of "unsubstantiated" means "that there is an insufficient amount of evidence to support a finding of indicated or ruled out." Section 5–701(x) of the Family Law Article.

COMAR 07.02.07.12 provides for further clarity as to when each investigation conclusion is appropriate. The regulation states, in pertinent part:

".12 Disposition of Investigation of Suspected Child Abuse.

A. Indicated Child Abuse.

(1) Physical Abuse Other than Mental Injury. Except as provided in § A(3) of this regulation, a finding of indicated child physical abuse is appropriate if there is credible evidence, which has not been satisfactorily refuted, that the following four elements are present:

(a) A current or prior physical injury;

(b) The injury was caused by a parent, caretaker, or household or family member;

(c) The alleged victim was a child at the time of the incident; and

(d) The nature, extent, and location of the injury indicate that the child's health or welfare was harmed or was at substantial risk of harm.

. . .

B. Unsubstantiated Child Abuse. A finding of unsubstantiated child abuse is appropriate when there is insufficient evidence to support a finding of indicated or ruled out child abuse. A finding of unsubstantiated may be based, but is not required to be based, on the following:

(1) Insufficient evidence of a physical or mental injury, sexual molestation, or sexual exploitation;

(2) Insufficient evidence that the individual alleged to be responsible for the child abuse was a parent, caretaker, or household or family member;

(3) The lack of a credible account by the suspected victim or a witness;

(4) Insufficient evidence that the child's health or welfare was harmed or was at substantial risk of being harmed; or

(5) Despite reasonable efforts, an inability to complete the investigation due to factors such as:

(a) Lack of access to the child or individual alleged to be responsible for the child abuse; or

(b) Inability to obtain relevant facts regarding the alleged child abuse.

C. Ruled Out Child Abuse. A finding of ruled out child abuse is appropriate if child abuse did not occur. A finding of ruled out may be based on credible evidence that:

(1) There was no physical or mental injury or, in the case of suspected sexual abuse, no sexual molestation or exploitation;

(2) In the case of physical abuse:

(a) The alleged abuser was not responsible for the injury for reasons including, but not limited to, one of the following:

(i) *The act causing the injury was accidental or unintentional and not reckless or deliberate;* or

(ii) The injury was a result of the child's mental condition; or

(b) The child's health or welfare was not harmed or at substantial risk of being harmed;

(3) The individual identified as responsible for the injury or sexual molestation or exploitation was not the child's parent, caretaker, or household or family member; or

(4) The alleged victim was not a child at the time of the incident." [Emphasis added.]

Appellant contends that the ALJ's determination that HCDSS was correct in finding indicated child abuse was reached by an incorrect legal analysis. Whereas the ALJ found that "[t]he regulations set forth in COMAR 07.02.07.12[ ] do not excuse the Appellant from responsibility for the unintended but foreseeable consequences of his intended act," appellant argues that a *recklessness standard* was the proper standard by which to evaluate his action of kicking the footstool and not the *intent to commit the act* apparently employed by the ALJ. Specifically, appellant states that HCDSS's "own regulatory scheme does not utilize a foreseeability standard but instead the COMAR 'rule-out' provision requires a finding of either recklessness or deliberateness."

What is apparent is that the ALJ did not take into account the absence of intent to harm. Instead he limited his focus on whether it was "foreseeable" that the kicked stool might hit "L," and because, according to the ALJ, it was foreseeable that it might hit "L" then appellant intended to hit "L." What is clear is that while perhaps it is "foreseeable" that the kicked stool might strike "L" it is equally "foreseeable" that it might not. This "perhaps/perhaps not" dichotomy indicates that weakness of attempting to engraft tort and negligence "foreseeability" standards in the present context. The statute,

itself, provides the standard when it notes that child abuse should be ruled out if the act was not intended to injure the child and was "not reckless or deliberate."

Appellant is, thus, correct to point out that COMAR 07.02.07.12C(2)(a)(i) allows for a finding of "ruled out child abuse" if "the act causing the injury was accidental or unintentional and not reckless or deliberate." Conduct that is "reckless," in a legal sense, is defined as being "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk.... *Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do.*" BLACK'S LAW DICTIONARY 1298 (8th ed.2004) (emphasis added). "Reckless" conduct is generally synonymous with that which is "grossly negligent." *See* BLACK'S LAW DICTIONARY 1298 ("Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing.")

We have frequently spoken of "gross negligence" in various civil and criminal contexts [6] and, although this term is not specifically defined in any of its more than twenty-five appearances in our statutes, we have described "gross negligence" in the context of manslaughter by automobile as the standard that considers "whether the conduct of the defendant was such as to amount to 'a wanton or *reckless* disregard for human life or for the rights of others.'" *White v. King*, 244 Md. 348, 361–62 n. 2, 223 A.2d 763, 771 n. 2 (1966) (emphasis added)

---

6. *See e.g.,* Md.Code (1973, 1999 Repl.Vol.), § 2–309(h) of the Agriculture Article (regarding sanctions that can be imposed on the registration of veterinary technicians); Md.Code (1992, 1998 Repl.Vol.), § 6–614 of the Business Regulation Article (describing violations of charitable organization provisions that are considered grossly negligent); Md. Code (1982, 2000 Repl.Vol.), § 19–345.3(a)(2) of the Health–General Article (stating the penalties for grossly negligent violations at a health care facility). *See also* Md.Code (2002), § 2–209(b) of the Criminal Law Article (stating, "A person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner").

(quoting *Johnson v. State*, 213 Md. 527, 531, 132 A.2d 853, 855 (1957)).

A relatively recent commentary, noting a penchant among our statutes to distinguish negligent acts from "gross negligence," also has observed that there exists no precise definition of this latter term. *See* Randolph Stuart Sergent, *Gross, Reckless, Wanton and Indifferent: Gross Negligence in Maryland Civil Law*, 30 U.BALT.L.REV. 1 (2000). In fact, to define gross negligence is a somewhat circuitous endeavor in that any definition usually includes the words "willful," "wanton" or "reckless," the very words from which it would be helpful to *distinguish* the concept of gross negligence. In noting that the concept of gross negligence has remained relatively stable for more than a hundred years, the Court of Special Appeals in *Foor v. Juvenile Services Admin.*, 78 Md.App. 151, 552 A.2d 947 (1989), quoted from this Court's nineteenth century case, *Bannon v. B. & O. R.R. Co.*, 24 Md. 108 (1866), in which we observed that " '[g]ross negligence is a technical term: it is the omission of that care "which even inattentive and thoughtless men never fail to take of their own property," it is a violation of good faith.... It implies malice and evil intention.' " *Foor*, 78 Md.App. at 170, 552 A.2d at 956 (quoting *Bannon v. B. & O. R.R. Co.*, 24 Md. at 124). Furthermore, Maryland's intermediate appellate court has defined "gross negligence" as follows:

" 'An intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'

"*Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12 (1968) (quoting 4 DeWitt C. Blashfield, *Cyclopedia of Automobile Law and Practice* § 2771 (1946 ed.)). *See also Liscombe v. Potomac Edison Co.*, 303 Md. 619, 634–37, 495 A.2d 838

(1985). 'Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence.' *Artis v. Cyphers,* 100 Md. App. 633, 652, 642 A.2d 298 (whether ambulance driver's conduct amounted to gross negligence was issue for trier of fact to determine), *aff'd,* 336 Md. 561, 649 A.2d 838 (1994)."

*Marriott Corp. v. Chesapeake & Potomac Telephone Co. of Maryland,* 124 Md.App. 463, 478, 723 A.2d 454, 462 (1998). With respect to the case *sub judice* we view gross negligence as something *more* than simple negligence, and likely more akin to reckless conduct, the kind of conduct *specifically contemplated* in COMAR 07.02.07.12C(2)(a)(i).

We have, at times, also examined the topic of reckless conduct in the criminal case setting. In *Elias v. State of Maryland,* 339 Md. 169, 661 A.2d 702 (1995), a case which appellant invokes in support of his position that the ALJ improperly failed to consider a recklessness standard, this Court held that "the presence of a specific intent or criminal negligence is a necessary component of the crime of battery and it is the State's burden to prove one or the other of these elements, and that the contact was nonconsensual, to justify a conviction." *Id.* at 184–85, 661 A.2d at 709. We concluded in *Minor v. State,* 326 Md. 436, 605 A.2d 138 (1992), in the context of a case involving a charge of reckless endangerment, that the conclusion as to whether conduct was reckless is "a matter for objective determination, to be made by the trier of fact from all the evidentiary circumstances in the case." *Id.* at 443, 605 A.2d at 141. We further stated in *Minor,* that in evaluating one's guilt as to whether the defendant intended "that his reckless conduct create a substantial risk of death or serious injury to another [][t]he test is whether the appellant's misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe, and thereby create the substantial risk that the statute was designed to punish." *Id.* (alterations added).

In his decision, the ALJ discounted appellant's contention that his action of kicking the footstool should be "ruled out" as child abuse, stating that "[t]he regulations set forth in COMAR 07.02.07.12[ ] do not excuse the Appellant from responsibility for the *unintended but foreseeable consequences* of his intended act. The Appellant was angry with ['L'], he intentionally kicked the stool toward ['L'], and the stool struck her in the face" (alterations added) (emphasis added). This was patently the wrong standard by which to adjudge appellant's action because foreseeability, even in a tort context, is an appropriate precursor to a finding of negligence, not to a finding of intent. COMAR 07.02.07.12C(2)(a)(i) does not call for any level of foreseeability of harm, as would be determinative in a liability finding. In fact, *nowhere* in either the pertinent provisions of § 5–701 of the Family Law Article or in COMAR 07.02.07.12 is the term "foreseeable" even mentioned. Rather, the "ruled out" provision specifically contemplates a threshold that is more comparable to a heightened state of negligence, *i.e.*, that the conduct was "reckless." Accordingly, the ALJ's transference of his concept of foreseeability into actual intent to do harm under the regulation was an incorrect application of a negligence standard, which turns on foreseeability of the harm that might be caused by appellant's kicking the footstool. It is more appropriately suited to the tort context, a context not here present.

The threshold question that must be determined in a case such as this is whether the act causing injury to a child was done with an intent to injure or was done recklessly and injury resulted. In the case *sub judice,* intent is relevant only insofar as determining whether there was an intent actually to injure the child. Therefore, by solely invoking a foreseeability of harm test, a concept inextricably tied to a general negligence analysis, in deciding whether HCDSS's finding of indicated child physical abuse was appropriate, the ALJ applied an improper standard to the facts before him. Accidents do happen, but many accidents are in some ways foreseeable. Simply because injury to another may be a foreseeable conse-

quence of an action, however, does not make it *per se* reckless conduct.

In assessing the dispositions of investigation delineated in COMAR 07.02.07.12, it is incumbent upon the ALJ to examine *all* the evaluative standards contained within this regulation. That is, despite the ALJ finding that the facts of appellant's case satisfied the criteria of COMAR 07.02.07.12A, *i.e.*, indicated child abuse, the inquiry is not yet complete. The ALJ must be assured that neither COMAR 07.02.07.12B, Unsubstantiated Child Abuse, nor COMAR 07.02.07.12C, Ruled–Out Child Abuse, apply. In the present case, we have determined that the ALJ's failure to consider COMAR 07.02.07.12C, and specifically, provision COMAR 07.02.07.12C(2)(a)(i), to be reversible error.

Furthermore, if we were to abide by the methodology by which the ALJ interpreted § 5–701 of the Family Law Article and the pertinent COMAR regulations, it appears that *any* intentional act by a parent or caretaker which has the unintentional consequence of harming that person's child would amount to child abuse, and result in the parent being placed on the central registry of individuals responsible for child abuse, basically creating a strict liability standard for parents or caretakers who unintentionally injure their children. We consider, for example, a situation that was suggested by appellant's counsel at oral argument in which a father is swinging a hammer while nailing together pieces of a partition wall and does not notice that his child has walked up behind him. The father swings the hammer backwards and strikes the child in the face, causing significant injury. Under the ALJ's reading of COMAR 07.02.07.12, because the act of swinging the hammer back before striking a nail was an intentional act and not "accidental or unintentional," and his child was injured because of this intentional act, the father might be found to have committed child physical abuse. We doubt that either § 5–701 of the Family Law Article or COMAR 07.02.07.12 intends for such a draconian strict liability standard always to attach to the intentional acts of parents or caretakers who unintentionally injure their children.

Part of the blame may lie with the unfortunate wording of COMAR 07.02.07.12C(2)(a)(i) in that most acts, whether or not they have unintended consequences, are intentional. For instance, if someone pushes a door open without realizing someone is just on the other side, and then the door slams that other person in the face, the act of opening the door cannot be said to have been either accidental or unintentional, although the injurious consequences of that act may have been just that. Under the ALJ's use of "foreseeability," if an act occurs that results in injury to a child that injury would be foreseeable because the injury occurred. Another example would be those instances where drivers have run over other persons as they operated vehicles in reverse. The foreseeability of the drivers's actions would be very relevant in a negligence tort context even though there was no intent to injure. However, under the ALJ's analysis, if the driver was a parent and the person injured his or her child, the foreseeability standard of negligence would be transmogrified into intent to injure the child and the parent would forever be branded a child abuser. We do not believe that was the intent of the Legislature.

We hold that, under the circumstances here present, the intentional act must be shown to have been either reckless in its nature or deliberately intended to harm the child in order for a finding of "indicated child abuse" to be made.

### III. Conclusion

We hold that the ALJ's determination that appellant's act of kicking a footstool and unintentionally injuring his daughter was to be considered "indicated" child physical abuse was not properly reached. Whereas COMAR 07.02.07.12 contemplates that a parent unintentionally injuring his or her child will generally only be considered to have committed child physical abuse if the act causing the injury can be shown to have been "reckless or deliberate," the ALJ instead accepted HCDSS's argument that when appellant "intentionally kicked the stool in the direction of ['L'], it is immaterial whether the Appellant intended to hit ['L'] with the stool" (alterations added). In

respect to intent, *it is material* whether there was "intent" to injure "L." There was no direct evidence proffered, other than the act of kicking the footstool, that contradicted the evidence proffered by appellant that he did not intend to injure his daughter. The correct standard therefore was unrelated to intent to injure, but whether appellant's actions were "reckless." Because the ALJ improperly applied a foreseeability standard to infer intent instead of examining appellant's conduct under the correct "reckless" conduct standard, we shall vacate the ALJ's decision and remand the case to the ALJ for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE DECISION OF THE ADMINISTRATIVE LAW JUDGE AND REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**