*John Junek v. St. Mary's County Department of Social Services*, No. 74, September Term 2018.  Opinion by Hotten, J.

**FAMILY LAW ARTICLE – INDICATED CHILD NEGLECT – ELEMENT OF INTENT –** The Court of Appeals held that intent or scienter is not an element of "neglect" under Maryland Code, § 5-701(s) of the Family Law Article.  The language defining "abuse" under Fam. Law Art. § 5-701(b) and the corresponding COMAR provision that supported an implicit element of intent for child abuse in *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 384 Md. 213, 862 A.2d 1026 (2004), and *McClanahan v. Washington Cty. Dep't of Soc. Servs.*, 445 Md. 691, 129 A.3d 293 (2015), does not exist under the child neglect provisions.  Accordingly, the Court of Appeals declined to require an implicit element of intent in order to sustain a finding of child neglect.

IN THE COURT OF APPEALS

OF MARYLAND

No. 74

September Term, 2018

_____

JOHN JUNEK

v.

ST. MARY'S COUNTY DEPARTMENT
OF SOCIAL SERVICES

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Harrell, Glenn T., Jr.,
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.

_____

Filed: June 25, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Petitioner, John Junek,[1] seeks reversal of an Administrative Law Judge's finding that Mr. Junek was responsible for indicated child neglect under Maryland Code, Family Law Article § 5-701(s). Mr. Junek poses the following question for our review: "Is intent or scienter an element of child neglect under Md. Code. Ann., Family Law ("Fam. Law") § 5-701(s)?" For the reasons outlined below, we answer Mr. Junek's question in the negative, and affirm the Administrative Law Judge's finding of indicated child neglect.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

The underlying facts of this case are not in dispute. On September 3, 2014, Mr. Junek was responsible for taking his older son to preschool and younger son to daycare before going to work.[2] Mr. Junek first dropped his older son off at preschool. However, instead of dropping off his younger son at daycare, Mr. Junek drove directly to his workplace at the Naval Air Station Patuxent River. Mr. Junek arrived at work just before 9:00 a.m., parked his car, overlooked his 17-month-old son in the backseat of the car, and went into work. At about 3:20 p.m. that afternoon, Mr. Junek received a phone call from his wife who had arrived at the daycare center to pick up their younger son. Ms. Junek was unable to find her younger son's car seat that Mr. Junek was supposed to leave at the daycare that morning, and called Mr. Junek to inquire as to its whereabouts. It was then,

---

[1] In accordance with the privacy policy of the Court of Special Appeals in cases involving children, the lower court referred to Mr. Junek using his initials, J.J.

[2] At the time, Mr. Junek's older son was two years old, and his younger son was 17 months old.

for the first time that day, that Mr. Junek realized he had forgotten to drop his younger son off at daycare, and left the toddler in the backseat of the vehicle.

Mr. Junek went immediately to his car, where he found his younger son strapped into his car seat, "unconscious, unresponsive, and not breathing." Mr. Junek, with the help of a nurse who was passing by the car at the time, performed cardiopulmonary resuscitation (CPR) on the child and called emergency services. Attempts to revive the child failed, and he was pronounced dead at the scene. The outside temperature that day had reached a high of 85 degrees.

*The Investigation and Administrative Hearing*

Respondent, the St. Mary's County Department of Social Services ("the Department") initiated an investigation into the above events. At the conclusion of its investigation, the Department notified Mr. Junek that it had rendered a finding of "indicated child neglect[]" against him. Mr. Junek challenged the Department's finding and requested a hearing before the Office of Administrative Hearings. An Administrative Law Judge ("ALJ") held a hearing on June 23, 2016 regarding Mr. Junek's appeal of the neglect finding.[3] After the hearing, the ALJ concluded that the Department "ha[d] established by

---

[3] An ALJ had originally stayed Mr. Junek's appeal pending the outcome of criminal charges of involuntary manslaughter and violations of Maryland's Unattended Child Statute, Md. Code, Family Law Article § 5-801, issued against Mr. Junek in the United States District Court for the District of Maryland. *See* Fam. Law Art. § 5-706.1(b)(3)(i) ("If a criminal proceeding is pending on charges arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall stay the hearing until a final disposition is made."). Criminal charges were brought in federal court because the main operative events of September 3, 2014 took place on Naval Air Station Patuxent River, a United States military installation and federal enclave subject to the "special maritime and territorial

2

a preponderance of the evidence that the finding of indicated child neglect [was] supported by credible evidence and [was] consistent with the law." In reaching this conclusion, the ALJ commented that "there is no intent requirement under section 5-701(s)[,]" and that no such requirement appears in the Code of Maryland Regulations (COMAR) 07.02.07.12 (Child Neglect Disposition). Mr. Junek filed a Petition for Judicial Review in the Circuit Court for St. Mary's County. A hearing was conducted by Judge David Densford, who subsequently affirmed the ALJ's decision and accompanying legal conclusions.

*The Court of Special Appeals*

Mr. Junek filed a timely notice of appeal to the Court of Special Appeals, presenting the single issue of whether "'neglect' under § 5-701(s) of the Family Law Article of the Annotated Code of Maryland require[s] proof of an element of <u>scienter</u>?" *J.J. v. St. Mary's Cty. Dep't of Soc. Servs.*, No. 2038, 2018 WL 6839467, slip op. at *1 (Dec. 31, 2018) (emphasis in original). Applying its recent holding in *I.B. v. Frederick Cty. Dep't of Soc. Servs.*, 239 Md. App. 556, 197 A.3d 598 (2018), the Court of Special Appeals concluded "that a finding of indicated neglect under the statutory provisions of Section 5-701 *et seq.*, of the Family Law Article, does not require intent[.]" *Id.* at *4. The Court compared the definition of "abuse" and the definition of "neglect" in the Family Law Article, explaining that "[t]he General Assembly, in 2017, amended the definition of abuse to include intent as an element by excluding 'the physical injury of a child by accidental means[]'" from the

---

jurisdiction of the United States." 18 U.S.C. § 7 (2018). The criminal charges against Mr. Junek were eventually dismissed, after which the hearing before the ALJ proceeded.

3

definition of abuse, while not making any such amendment to the definition of neglect. *Id.* (citing 2017 Maryland Laws, Chapter 652).

Mr. Junek filed a timely petition for *certiorari* before this Court, requesting that we consider whether the definition of child neglect under § 5-701(s) of the Family Law Article requires proof of the element of intent. We granted *certiorari* accordingly to address this issue. *Junek v. St. Mary's Cty. Dep't Soc. Servs.*, 463 Md. 146, 204 A.3d 189 (2019).

## STANDARD OF REVIEW

"We review an administrative agency's decision under the same statutory standards as the [c]ircuit [c]ourt. Therefore, we reevaluate the decision of the agency, not the decision of the lower court." *Gigeous v. E. Corr. Inst.*, 363 Md. 481, 495-96, 769 A.2d 912, 921 (2001). "[O]rdinarily the Court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Baltimore Lutheran High Sch., v. Employment Sec. Admin.*, 302 Md. 649, 662, 490 A.2d 701, 708 (1985). Purely legal questions are reviewed *de novo* with considerable "weight [afforded] to an agency's experience in interpretation of a statute that it administers[.]" *Schwartz v. Md. Dep't of Nat. Res.*, 385 Md. 534, 554, 870 A.2d 168, 180 (2003). Matters of statutory interpretation and application are questions of law, reviewed *de novo*. *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006).

## DISCUSSION

Maryland Code, Family Law Article § 5-701(s) defines "[n]eglect" as:

the leaving of a child unattended or other failure to give proper care and attention to a child by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:

> (1) that the child's health or welfare is harmed or placed at substantial risk of harm; or
>
> (2) mental injury to the child or a substantial risk of mental injury.

COMAR 07.02.07.12A(1) permits "a finding of indicated child neglect when there is credible evidence, which has not been satisfactorily refuted," of:

> (a) A failure to provide proper care and attention;
>
> (b) A child victim;
>
> (c) A parent or caregiver of the alleged victim responsible for the alleged neglect; and
>
> (d) Circumstances including the nature, extent, or cause of the alleged neglect indicating that the alleged victim's health or welfare was harmed or was at substantial risk of harm.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Armstead v. State*, 342 Md. 38, 56, 673 A.2d 221, 229 (1996). In reading the language of the statute, a court should use "common sense to avoid illogical or unreasonable constructions[.]" *Id.* We will interpret a statute so as "to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant." *Blondell v. Balt. City Police Dep't*, 341 Md. 680, 691, 672 A.2d 639, 644 (1996). To that end, we first examine the plain meaning of the statutory language. *MVA v. Shepard*, 399 Md. 241, 254, 923 A.2d 100, 107-08 (2007). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous

5

and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204, 1206-07 (1994). If the meaning of the language is unclear or ambiguous, however, we will "consider 'not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment,' in our attempt to discern the construction that will best further the legislative objectives or goals." *Whack v. State*, 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995) (quoting *Gargliano v. State*, 334 Md. 428, 436, 639 A.2d 675, 678 (1994)).

It is clear that the plain language of § 5-701(s) and the COMAR provision does not identify an element of scienter or intent as a requirement for a finding of child neglect. However, Mr. Junek urges this Court to consider other portions of the COMAR, the Family Law Article, the Criminal Law Article, and prior Maryland case law to support his position that an implicit intent requirement should be read into the definition of "neglect" in § 5-701(s).

Maryland Code, Family Law Article § 5-701(b)(1) defines "[a]buse" as:

(i) the physical or mental injury of a child under circumstances that indicate that the child's health or welfare is harmed or at substantial risk of being harmed by:

1. a parent;

2. a household member or family member;

3. a person who has permanent or temporary care or custody of the child;

4. a person who has responsibility for supervision of the child; or

5. a person who, because of the person's position or occupation, exercises authority over the child; or

(ii) sexual abuse of a child, whether physical injuries are sustained or not.

6

Importantly, sub-section (b)(2) continues on to exclude "physical injury of a child by accidental means[]" from the definition. Additionally, COMAR 07.02.07.11A permits a finding of indicated child physical abuse based on credible evidence of:

(a) A physical injury;

(b) A child victim;

(c) A parent, caregiver, or household or family member of the alleged victim responsible for the alleged abuse; and

(d) Circumstances including the nature, extent, and location of the injury indicating that the alleged victim's health or welfare was harmed or was at substantial risk of harm.

Similar to sub-section (b)(2) of Family Law Article § 5-701, COMAR 07.02.07.11C(2)(c)(i) rules out a finding of child abuse where "[t]he injury resulted from accidental or unintended contact with the child and was not caused by a reckless disregard for the child's health or welfare[.]" Family Law Article § 5-701(s) and COMAR 07.02.07.12, *supra*, which define and provide guidance on child neglect dispositions, do not have a similar or equivalent exclusion for accidental or unintentional conduct such as the one present in child abuse dispositions.

In *Taylor v. Harford County Department of Social Services*, we considered an appeal by Father of a finding of indicated child abuse by the Harford County Department of Social Services after he angrily kicked a stool, which accidentally bounced and struck his daughter, resulting in injuries requiring medical attention. 384 Md. 213, 215, 862 A.2d 1026, 1027 (2004). Father challenged the child abuse finding, arguing that intent was a required element of child abuse, and that his actions did not constitute an intent to harm his daughter. *Id.* at 223, 862 A.2d at 1032. Upon considering the definition of "abuse" under

7

§ 5-701(b)(1) of the Family Law Article, we explained that a finding of child abuse is ruled out where "[t]he act causing the injury was accidental or unintentional and not reckless or deliberate[.]" *Id.* at 226, 862 A.2d at 1033 (citing COMAR 07.02.07.11C(2)(c)(i)[4]). Because of this provision, we concluded that the "act must be shown to have been either reckless in its nature or deliberately intended to harm the child in order for a finding of 'indicated child abuse' to be made." *Id.* at 232, 862 A.2d at 1037.

We had the opportunity to revisit these provisions again in *McClanahan v. Washington County Department of Social Services*, in which we considered "whether a parent can be liable for child abuse mental injury within the meaning of [Fam. Law § 5-701] if the parent acted without intent to harm the child." 445 Md. 691, 700, 129 A.3d 293, 298 (2015) (footnote omitted). In *McClanahan*, the Washington County Department of Social Services became aware that Mother was manipulating her child into believing that Father was assaulting her, causing the child to develop behavioral and emotional problems. *Id.* at 696-97, 129 A.3d at 296. We determined that there was no distinction between the physical and mental varieties of child abuse, and due to this lack of distinction,

---

[4] Prior to 2017, child abuse dispositions were regulated under 07.02.07.12 and child neglect dispositions were regulated under 07.02.07.13. In 2017, COMAR 07.02.07 was amended and renumbered to incorporate changes in federal and State regulations, department policies, and court clarifications. The 2017 amendments renumbered the section addressing child abuse dispositions to 07.02.07.11, and the section addressing child neglect dispositions to 07.02.07.12. In addition to its renumbering, the amendment altered the language of the child abuse regulation in form, but not in substance. Prior to 2017, child abuse was "ruled out" under **then** section 07.02.07.12C, where "[t]he act causing the injury was accidental or unintentional and not reckless or deliberate[.]" Similarly, child abuse is "ruled out" under **current** section 07.02.07.11C where "[t]he injury resulted from accidental and unintended contact with the child and was not caused by reckless disregard for the child's health or welfare[.]"

8

there needed to be a finding of intent to harm for mental, as well as physical, child abuse findings. *Id.* at 706, 129 A.3d at 301; *see also Taylor*, 384 Md. at 232, 862 A.2d at 1037.

Mr. Junek contends that these two cases, which stand for the proposition that indicated mental and physical child abuse require a showing of intent to harm, support his position that intent is similarly an implicit requirement for a finding of child neglect. In applying this precedent, Mr. Junek posited in his brief that "[c]hild neglect has been described as a form of child abuse[,]" and that "it is illogical to impose a <u>scienter</u> requirement for child abuse but not for child neglect." In support of this contention, Mr. Junek further points to *Owens v. Prince George's County Department of Social Services*, in which the Court of Special Appeals upheld a finding of indicated child neglect based on a guardian's intentional act of ordering the child from the home and refusing to allow the child to return. 182 Md. App. 31, 54, 957 A.2d 191, 204 (2008). However, Mr. Junek's application of *Owens* to the present case is unpersuasive. While *Owens* deals with intentional conduct, it does not stand for the general rule that conduct must be intentional for a finding of indicated child neglect. Nowhere in the *Owens* opinion did the Court of Special Appeals rely on the guardian's actions being intentional. Rather, the Court merely concluded that there was substantial evidence for the ALJ to conclude that the guardian kicked the child out of her home, constituting neglect. *Id.* A similar conclusion could have been reached had the conduct been unintentional, as are the facts in the present case.

*Taylor* and *McClanahan* are similarly inapplicable to the present case. It is undisputed that *Taylor* and *McClanahan* address an intent requirement for child abuse, not

9

child neglect. Mr. Junek attempts to extend the application of these two cases to child neglect situations. The Court of Special Appeals has recently addressed this precise issue, observing the distinctions between the child neglect and abuse statutes and regulations, under strikingly similar facts to those in the present case, in *I.B. v. Frederick County Department of Social Services*, 239 Md. App. 556, 197 A.3d 598 (2018). In *I.B.*, Father took his children to church and unintentionally left his infant daughter strapped into her car seat on a hot day. *Id.* at 559, 197 A.3d at 600. The authorities were called and the child was removed, alive, from the vehicle. *Id.* The Frederick County Department of Social Services investigated the incident and issued a finding of indicated child neglect against Father. *Id.* Criminal charges were also issued against Father, who ultimately pled guilty to confinement of a minor under Family Law § 5-801, while the State *nol prossed* a charge of neglect of a minor under Criminal Law § 3-602.1. *Id.* at 560, 197 A.3d at 600. Following disposition of the criminal charges, Father requested a hearing before an ALJ, who ultimately affirmed the Department of Social Services' findings. *Id.* at 561, 197 A.3d at 601. Father sought judicial review of the ALJ's decision, which was affirmed by the Circuit Court for Frederick County. *Id.* On appeal, the Court of Special Appeals considered, *inter alia*, "whether an implied element of intent or scienter, found by case law in the related child abuse statute of the Family Law Article, exists in the neglect statute of that same article." *Id.* at 562, 197 A.3d at 601. The Court answered this question in the negative, concluding that the element of intent is not required for a finding of child neglect. *Id.* at 571, 197 A.3d at 607.

10

We agree with the rationale of the Court of Special Appeals in *I.B.* There exists "a significant distinction between COMAR provisions for neglect and abuse in terms of intent." *Id.* at 568, 197 A.3d at 605. In reviewing COMAR 07.02.07.11 and .12, *supra*, it is clear that the Department of Social Services need not prove intent to establish neglect, but that a successful prosecution of child abuse on the other hand must establish proof of intent. *Compare* COMAR 07.02.07.11C, *with* COMAR 07.02.07.12C. Mr. Junek cites to the principle that "a statute is to be given a reasonable interpretation, not one that is illogical or incompatible with common sense[,]" for the proposition that it would be at odds with the intent of the General Assembly to require intent for a finding of child abuse, while not requiring the same element of intent for a finding of child neglect under the same statute. *See Western Correctional Institution v. Geiger*, 371 Md. 125, 142, 807 A.2d 32, 42 (2002). We disagree. The General Assembly amended the definition of abuse in 2017 to exclude injury of a child by accidental means. *See* 2017 Maryland Laws, Chapter 652. No such amendment was offered or adopted for the definition of neglect. *Compare* Fam. Law. § 5-701(b), *with* Fam. Law § 5-701(s). "As such, an intent requirement cannot be imputed to the definition of neglect within the same subtitle, especially because abuse and neglect are two distinct concepts." *J.J. v. St. Mary's County Department of Social Services*, No. 2038, 2018 WL 6839467, slip op. at *4 (Dec. 31, 2018).

Mr. Junek further argues that because the Criminal Law Article ("Crim. Law") defines neglect as "the ***intentional failure*** to provide necessary assistance and resources for the physical needs and mental health of a minor[,]" the definition of neglect in the

11

Family Law Article requires a similar element of intent. *See* Md. Code, Crim. Law § 3-602.1(5)(i) (emphasis added). However, we find such an action by the General Assembly contrary to Mr. Junek's position. By including the phrase "intentional failure" in the definition of criminal child neglect, but not amending § 5-701(s) of the Family Law Article to include this same language, the General Assembly has made clear that the elements of criminal and civil child neglect differ with regard to scienter. "[T]he [General Assembly] is [presumed] to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law." *Donlon v. Montgomery County Public Schools*, 460 Md. 62, 77, 188 A.3d 949, 957-58 (2018) (quoting *Board of Education of Garrett County v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982)). It is clear that the General Assembly has the power to amend the definition of child neglect under § 5-701(s) of the Family Law Article, but has made the informed decision not to propose or implement such an amendment.

## CONCLUSION

We conclude that intent or scienter is not an element of child neglect under § 5-701(s) of the Family Law Article. We have made clear that intent is a requirement to sustain a finding of child abuse. *See Taylor v. Harford Cty. Dep't of Soc. Servs.*, 384 Md. 213, 862 A.2d 1026 (2004); *McClanahan v. Washington Cty. Dep't of Soc. Servs.*, 445 Md. 691, 129 A.3d 293 (2015). However, any "attempt to expand the definition of neglect to mirror the intent requirements established by the Court of Appeals for the definition of abuse, is to no avail." *I.B. v. Frederick County Department of Social Services*, 239 Md.

12

App. 556, 570-71, 197 A.3d 598, 607 (2018). The General Assembly has taken the affirmative action of amending the definition and elements of "abuse" under Fam. Law § 5-701(b), as well as "neglect" under Crim. Law § 3-602.1, with no similar action taken regarding the neglect under Fam. Law § 5-701(s), clearly evidencing their intent to differentiate between abuse and neglect. Because the plain language of the statute excludes intent as an element of child neglect, we shall affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**