58 A.3d 533

**B.H.**

**v.**

**ANNE ARUNDEL COUNTY DEPARTMENT OF SOCIAL SERVICES.**

**No. 01835, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 21, 2012.

Gregory P. Jimeno, Glen Burnie, MD, for Appellant.

Sandra Barnes (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, MATRICCIANI, and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On April 23, 2010, the Anne Arundel County Department of Social Services ("DSS") received a report of alleged child abuse by B.H., appellant, against his minor child, Brayden. Police officers responded, and B.H. was charged with Child Abuse in the Second Degree, Assault in the Second Degree, and Reckless Endangerment. All charges were placed on the STET docket [1] on September 3, 2010.

On April 27, 2010, DSS began a civil investigation. The investigation concluded on July 30, 2010, finding that child abuse was indicated as defined in the Family Law Article and by its corresponding COMAR sections. B.H. appealed from that finding and on December 21, 2010, a hearing took place before an Administrative Law Judge ("ALJ"). The ALJ found that DSS met its burden in proving indicated child abuse. B.H. appealed that decision to the Circuit Court for Anne Arundel County. In a memorandum opinion docketed October 4, 2011, the circuit court upheld the ALJ's decision. B.H. noted a timely appeal to this Court on October 25, 2011.

### QUESTIONS PRESENTED

B.H. presents three questions for our review which we have rephrased and combined for clarity as: [2]

---

1. "A stet in Maryland is a method of placing an indictment or criminal information in a state of suspended animation into which new vitality may be breathed through either prosecutorial or defense resuscitation." *State v. Weaver*, 52 Md.App. 728, 729, 451 A.2d 1259 (1982). "The entry of a stet in a criminal case simply means that the State will not proceed against an accused on that indictment at that time." *Smith v. State*, 16 Md.App. 317, 323, 295 A.2d 802 (1972).

2. The questions as presented by B.H. are:

 (1) Maryland law requires that prior to the admissibility of statements from a young child, the finder of fact must conduct an examination and determine whether the child possesses the capacity to observe, understand, recall and relate the events that occurred and that the child also possesses the duty to tell the truth. Did the Administrative Law Judge err by admitting into evidence statements of a four-year-old child without conducting the requisite examination and when DSS failed to establish the necessary foundation required to admit such statements?

1. Did the Administrative Law Judge draw an erroneous conclusion of law or fail to base her decision on substantial evidence when upholding a DSS finding of indicated child abuse?

For the reasons that follow, we answer no and uphold the decision of the Administrative Law Judge.

### FACTUAL AND PROCEDURAL HISTORY

On the evening of April 22, 2010, B.H. prepared a meal for himself and his two minor children. B.H. made spaghetti with a sauce containing mushrooms. Brayden, B.H.'s four-year-old son, refused the food because he disliked mushrooms. B.H. responded by informing Brayden that if he did not finish his dinner, he would not get dessert and he would be unable to go outside to play with his friends. Brayden then left the table. B.H. returned Brayden to his seat and told him that his presence at dinner was required while B.H. and his eleven-year-old daughter, Brianna, finished eating. Brayden resisted and B.H. held Brayden by the arm to ensure his attendance at the dinner table.

Because B.H. and Mrs. H.[3] shared custody of the children, she picked them up from school on the afternoon of April 23,

---

(2) Maryland law requires that the Administrative Law Judge make specific findings of fact to justify a finding of indicated child abuse and to ensure that those findings of fact are supported by credible evidence. Did the Administrative Law Judge err by failing to make a specific finding of fact to establish that the location, nature or extent of the four-year-old child's alleged injury injured the child or placed the child at a substantial risk of harm and by accepting the version of events as set forth by a four-year-old witness over the events set forth by his eleven-year-old sister and the in-person testimony of the [a]ppellant?

(3) Maryland law allows a parent to use reasonable physical discipline, so long as it is a moderate exercise of domestic authority. Did the Administrative Law Judge err in upholding the finding of indicated child abuse when the [a]ppellant utilized reasonable physical force to ensure that his four-year-old child returned to the dinner table to eat dinner?

3. B.H. and Mrs. H. were going through a divorce during the course of these events. The divorce was granted ultimately, but we shall contin-

2010. Once home, Mrs. H. found several bruises on Brayden's neck and a scratch under his chin. That day, Mrs. H. brought Brayden to his pediatrician. The pediatrician documented the injuries discovered by Mrs. H. The pediatrician's office referred the matter to DSS on the evening of April 23, 2010. DSS contacted the police, and on the morning of April 24, 2010, Officer Laura Witherspoon, of the Anne Arundel County Police Department, joined by Officer Josh Ingerebretson, of the Annapolis Police Department, investigated the claim. Although Officer Ingerebretson was present, Officer Witherspoon conducted the investigation and completed the Application for Statement of Charges.[4]

In the presence of Mrs. H., Officer Witherspoon questioned Brayden about his injuries. Officer Witherspoon testified that Brayden informed her "his father had grabbed him by— around his neck and had pulled him down and that he had also somehow bruised his arm in the process of—of either falling or hitting it on something." Officer Witherspoon charged B.H. with three offenses: Child Abuse in the Second Degree, Assault in the Second Degree, and Reckless Endangerment. All charges were placed on the STET docket on September 3, 2010.

DSS assigned social worker Lauren Askew to conduct a civil investigation into the incident on its behalf.[5] On April 27, 2010, Ms. Askew interviewed Brayden, Mrs. H., and Brianna. The investigation resulted in Ms. Askew finding indicated

---

ue to refer to Brayden and Brianna's mother as Mrs. H for the sake of clarity.

4. The actual charging document is not part of the record on appeal. Case Search revealed charges of Child Abuse in the Second Degree, Assault in the Second Degree, and Reckless Endangerment.

5. The investigation culminated in a finding of indicated child abuse. B.H. appealed from that finding, resulting in a hearing before an ALJ on December 21, 2010. Ms. Askew testified at that hearing to the statements made to her by the persons she interviewed during the investigation. The references to Ms. Askew's testimony are to that given during the December 21, 2010 hearing. The minor children did not testify at the hearing.

child abuse. B.H. appealed that finding to an ALJ and a hearing was held on December 21, 2010. At the hearing, Ms. Askew testified to the contents of her interviews. She testified that Brayden told her "his dad tried to make him eat the mushrooms that was [sic] in the spaghetti sauce and that he did not like them." Further, she testified "[s]o he tried to run away from the table. Brayden said that he hurt his elbow by hitting it on the wall while he was running away from dad, at which point dad grabbed him by his neck and brought him back to the table."

Mrs. H. confirmed this account. Ms. Askew testified to her conversation with Mrs. H., saying "she said that Brayden said that the incident happened, because he refused to eat his mushrooms and that he had hit his elbow on the table, and his dad had held him down to force him to eat the mushrooms." Brayden told Mrs. H. that, in the words of Ms. Askew, "his dad [ ] held him down to force him to eat the mushrooms."

Brianna provided the following account, testified to by Ms. Askew:

Brianna told me that they were at dad's house eating spaghetti and that her brother did not want to eat the mushrooms and that dad had told him that he had to eat the mushrooms or that he would not go outside and play if he did not eat them. At which point, Brayden got up from the table and tried to run, but dad grabbed him and picked him up by the arm and place [sic] him back at the table.

Brianna went on, as Ms. Askew testified, "[d]ad had put the mushrooms in Brayden's mouth, and Brayden spit the mushrooms out on the floor, because he did not like them and started to cry."

Ms. Askew interviewed B.H. on April 29, 2010. He provided a substantially similar narrative. Ms. Askew testified "[h]e stated that Brayden did try to exit the table, but he picked Brayden up from under his arm and carried him back to the table and told him to sit there." B.H. testified directly that after dinner "we watched TV downstairs ... then we went upstairs, and [the kids] wanted to snuggle on daddy's bed, so I

let them ... I read Brayden a book ... and then I took them both to their beds." When asked about whether B.H. intended to injure Brayden, Ms. Askew agreed that "the intention of Mr. H[ ] at that point was to have his son eat mushrooms."[6]

Ms. Askew's investigation resulted in a finding of indicated child abuse as defined in the Family Law Article and by its corresponding regulations. Abuse means:

the physical or mental injury of a child by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the child's health or welfare is harmed or at substantial risk of being harmed.

MD.CODE ANN., FAM. LAW § 5–701(b)(1). Indicated Child Abuse means:

(1) Physical Abuse Other than Mental Injury. Except as provided in § A(3) of this regulation, a finding of indicated child physical abuse is appropriate if there is credible evidence, which has not been satisfactorily refuted, that it is more likely than not that the following four elements are present:

(a) A current or prior physical injury;

(b) The injury was caused by a parent, caretaker, or household or family member;

(c) The alleged victim was a child at the time of the incident; and

(d) The nature, extent, and location of the injury indicate that the child's health or welfare was harmed or was at substantial risk of harm.

---

**6.** It appears that B.H. raised the issue of intent as a defense to the finding of indicated child abuse. Intention is relevant in a finding of ruled out child abuse, but is not a necessary element of DSS's case here. For a finding of ruled out child abuse, it must be proven that "[t]he contact with the child was accidental and unintended and under the circumstances, the injury was not foreseeable." COMAR § 07.02.07.12(C)(2)(a)(i).

COMAR § 07.02.07.12(A) (2012). In support of her finding, Ms. Askew testified that it was based on "[t]he statements that were presented to myself, the pictures [7] and, of course, talking to Mr.—the appellant and the kids." Ms. Askew testified to each of the regulation 07.02.07.12(A) factors. She testified that there was a current injury,[8] that Brayden was under the age of 18 at the time of the incident, and that the injury was caused allegedly by his father. To satisfy part (d) of the regulation, Ms. Askew said:

> [t]he nature of the incident in regards to when Mr. H[ ] was shoving the mushrooms down Brayden's neck—I mean, down his mouth—Bray—as I reported, Brayden could have choked on the mushrooms, which had—could have caused him to die by blocking the airways. So that's how—he was placed—his harm and welfare—his welfare was placed in substantial risk.

Finally, Ms. Askew was asked "during the course of your investigation, was the appellant able to satisfactorily refute the—this—this matter to—your satisfaction, so that you could, you know, change your disposition?" She responded, "no."

The ALJ issued an order dated January 21, 2011.[9] The ALJ found that in this case, "[a]ppellant's actions rise to abuse." The ALJ "accept[ed] Bianna's and Brayden's hearsay statements to the [ ] [DSS] investigator over the [a]ppellant's testimony and believe[d] that the [a]ppellant chased Brayden and forced food into his mouth." The ALJ "found Brayden's statement that the [a]ppellant grabbed him on the neck persuasive because [the ALJ] [did] not believe, and there [was

---

7. Ms. Askew considered the cell phone pictures taken by Mrs. H. and the documentation made by Brayden's pediatrician.

8. Ms. Askew testified about the current injury, "[i]t was physical abuse- or the marks on Brayden's neck and the elbow."

9. The order framed the procedural posture, saying: "appellant challenges [DSS's] finding that he is responsible for *indicated* child abuse. The [DSS] bears the burden of establishing, by a preponderance of the evidence, that this finding is consistent with the law and supported by credible evidence . . . .". (emphasis added).

anything] in the record to convince [the ALJ] that the child would lie and carry on the lie....".

The opinion concluded that appellant injured Brayden's neck. The ALJ reasoned that "Brianna and Brayden's statements, the photographs, and the medical report are credible evidence" of the injury. The ALJ said:

I have considered that the [a]ppellant is an adult confronting a four-year-old boy. The [a]ppellant's size and strength relative to Brayden's size and strength magnifies the [a]ppellant's force and, if he is angry or out of control, renders that force physically dangerous to a small child. Thus, the [a]ppellant's actions placed Brayden's health and welfare at substantial risk of harm.

Applying the COMAR factors, the ALJ found that:

[a]ppellant did not satisfactorily refute, that: Brayden was injured; the [a]ppellant, his father, caused the injury; Brandon [sic] was four years old and a child; and Brayden's health or welfare were harmed by the scratches and bruises on his neck, and at substantial risk of harm given the comparative size and strength of Brayden and the [a]ppellant.[10]

B.H. appealed the ALJ's decision to the Circuit Court for Anne Arundel County. The circuit court heard argument on September 6, 2011. By memorandum opinion docketed October 4, 2011, the circuit court upheld the ALJ's decision. As previously indicated, on October 25, 2011, B.H. noted a timely appeal to this Court.

---

**10.** The ALJ concluded by saying: "[b]ased upon the above Findings of Fact and Discussion, I conclude as a matter of law that [DSS] has established by a preponderance of the evidence that the finding of indicated child abuse is supported by credible evidence and is consistent with the law. I further conclude, as a matter of law, that [DSS] has established by a preponderance of the evidence that the [a]ppellant is an individual responsible for indicated child abuse. I further conclude, as a matter of law, that [DSS] may identify the [a]ppellant in a central registry as an individual responsible for indicated child abuse."

DISCUSSION

*Standard of Review*

 Generally, "in an appeal from judicial review of an agency action, we review the agency action directly, not the decision of the trial court." *McLaughlin v. Gill Simpson Elec.*, 206 Md.App. 242, 251, 47 A.3d 1074 (2012); *accord MVA v. Shea*, 415 Md. 1, 17, 997 A.2d 768 (2010) ("[O]ur role is not to review the [c]ircuit [c]ourt's judgment, but rather to review the decision of the ALJ . . . ."). "Our review of the agency's factual findings consists solely of an appraisal and evaluation of the agency's fact finding and not an independent decision on the evidence." *Doe v. Allegany County Dep't of Soc. Servs.*, 205 Md.App. 47, 54, 43 A.3d 1071 (2012).

 "The Court of Appeals has consistently stated that an adjudicatory agency's decision can only be reviewed on grounds identical to those relied upon by the agency." *Id.* at 55, 43 A.3d 1071 (citing *Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 112 n. 12, 771 A.2d 1051 (2001)). We do not "substitute [our] judgment for the expertise of those persons who constitute the administrative agency."[11] *United Parcel Serv. v. People's Counsel*, 336 Md. 569, 576–77, 650 A.2d 226 (1994). "Nonetheless, if an agency has made an erroneous conclusion of law, it is our duty to correct that conclusion." *Anderson v. General Cas. Ins. Co.*, 402 Md. 236, 245, 935 A.2d 746 (2007). Although we are constrained to reverse if the agency has made an erroneous conclusion of law, "[t]he substantiality of the evidence is the common denomina-

---

11. "If an agency's decision is predicated solely on an error of law, including errors in statutory interpretation, we may substitute our judgment for that of the administrative agency." *McLaughlin v. Gill Simpson Elec.*, 206 Md.App. 242, 251, 47 A.3d 1074 (2012) (citing *Charles Cnty. Dept. of Soc. Servs. v. Vann*, 382 Md. 286, 295, 855 A.2d 313 (2004)). *See also Total Audio-Visual Sys. v. DOL, Licensing & Regulation*, 360 Md. 387, 394, 758 A.2d 124 (2000) ("[Q]uestions of law, however, are completely subject to review by the courts, . . . although the agency's interpretation of a statute may be entitled to some deference . . . [t]hat deference, however, is by no means dispositive, nor otherwise as great as that applicable to factual findings or mixed questions of law and fact.") (internal quotations and citations omitted).

tor of the scope of judicial review with respect to all administrative agencies." *Baltimore Lutheran High School Asso. v. Employment Sec. Admin.*, 302 Md. 649, 661, 490 A.2d 701 (1985).

As the Court of Appeals said in the case of *Charles County Dep't of Soc. Servs. v. Vann*, 382 Md. 286, 855 A.2d 313 (2004), "[t]o determine the proper standard of review, we must first determine whether the agency decision was a legal conclusion, a factual finding, or a mixed question of law and fact." *Id.* at 296–97, 855 A.2d 313. In *Vann*, The Court of Appeals was called upon to decide whether or not a finding of indicated child abuse was "solely" a legal issue for the purposes of applying the correct standard of review. The *Vann* Court noted:

> We disagree that the issue is solely a legal one. Whether a finding of "indicated child abuse" is permitted by FL § 5–701 when, in the course of administering corporal punishment, the child disobeys the parent and consequently is injured is patently a mixed question of law and fact. When the ALJ concluded that a substantial risk was "imminent," it did so by applying the law, which requires a substantial risk of harm for a finding of indicated child abuse, FL § 5–701(b); C.O.M.A.R. 07.02.07.12, to the facts of the case, the possibility of a swinging metal buckle causing severe injury to a six-year old child.

*Id.* at 297, 855 A.2d 313. Although the case before us does not involve a finding that corporal punishment was administered, it does parallel the facts of *Vann* sufficiently for us to adopt its reasoning. Although the ALJ thought it "improbable" that Brayden could choke on the mushrooms forced into his mouth by B.H., the ALJ made the determination that "the [a]ppellant injured Brayden." In *Vann*, the finding that "a substantial risk of harm resulted from respondent's swinging of a belt buckle at a six-year old attempting to evade the blows—was an application of law to a specific set of facts." *Id.* at 298, 855 A.2d 313. Such is the case here where an application of law to facts was required to find that "[a]ppellant's actions placed

Brayden's health and welfare at substantial risk of harm."
Therefore, we are reviewing a mixed question of law and fact.

 "When the agency decision being judicially reviewed
is a mixed question of law and fact, the reviewing court applies
the substantial evidence test." *Taylor v. Harford County
Dep't of Soc. Servs.*, 384 Md. 213, 223, 862 A.2d 1026 (2004).
An administrative decision is based on substantial evidence
when a reviewing court determines that "a reasoning mind
reasonably could have reached the factual conclusion that the
agency reached." *Eberle v. Baltimore County*, 103 Md.App.
160, 166, 652 A.2d 1175 (1995) (quoting *Hill v. Baltimore
County*, 86 Md.App. 642, 659, 587 A.2d 1155 (1991)). The
ALJ's decision is "entitled to deferential review, that is, sub-
stantial evidence review, and the court should [ ] consider[ ]
whether the ALJ's application of law to the facts was fairly
debatable or whether a reasoning mind could have reached the
same conclusions reached by the agency on the record before
it." *Vann*, 382 Md. at 298, 855 A.2d 313.

### Admission of Hearsay Statements

 B.H. first argues that admission of the children's out of
court statements constitutes reversible error. Citing *Jones v.
State*, 68 Md.App. 162, 510 A.2d 1091 (1986), B.H. contends
that "Maryland law requires that prior to the admissibility of
testimony from a child[,] the finder of fact must determine
whether the child possesses the capacity to observe, under-
stand, recall and relate the events that occurred and that the
child also possesses the duty to tell the truth." [12] B.H. draws

---

12. The *Jones* Court held that "the test of a child's competency is not age
but the reasonable capacity to observe, understand, recall, and relate
happenings while conscious of a duty to speak the truth." *Jones v.
State*, 68 Md.App. 162, 166–67, 510 A.2d 1091 (1986). B.H. highlights
that "Ms. Askew confirmed that there was a reliability issue with the
four-year-old child as she acknowledged that Mrs. H. believed that the
four-year-old child is too young to fully express himself or to fully
understand certain things." Despite this testimony, the ALJ "found
Brayden's statement[s] ... persuasive." It was the ALJ's charge to sift
through the evidence; a failure to explain each incremental step she
took before crediting Brayden's testimony does not warrant reversal.

guidance from criminal cases, arguing that the ALJ "committed reversible error by admitting the statements of the four-year-old child at the hearing without requiring DSS to lay the proper evidentiary foundation and by failing to conduct the requisite examination to determine the child's competency."[13] B.H. urges this Court to apply the factors set in Section 11–304(e) of the Criminal Procedure Article to "determin[e] the admissibility of hearsay statements by child abuse victims under the age of twelve . . . ".[14]

---

*See John O. v. Jane O.*, 90 Md.App. 406, 429, 601 A.2d 149 (1992) ("The trial judge need not articulate each item or piece of evidence she or he has considered in reaching a decision . . . The fact that the court did not catalog each factor and all the evidence which related to each factor does not require reversal.").

13. B.H. concurrently argues that the admission of Brayden's hearsay statements "placed the burden of proof on the wrong party." B.H. contends that the ALJ "impermissibly shifted the burden of proof to Mr. H. to prove that the four-year-old child was not reliable." This argument is without merit. As discussed *infra*, it was neither impermissible for the ALJ to admit the hearsay statements, nor did such admission constitute a shift in the applicable burden of proof. B.H.'s argument is belied by the fact that at the hearing the ALJ stated on the record that "the [DSS] has the burden of proof to show by a preponderance of the evidence that the finding of indicated child abuse is correct." Also, in her order, the ALJ said "the [DSS] bears the burden of establishing, by a preponderance of the evidence, that [the finding of indicated child abuse] is consistent with the law and supported by credible evidence."

14. MD.CODE ANN., CRIM. PROC. § 11–304(e) says:
(1) A child victim's out of court statement is admissible under this section only if the statement has particularized guarantees of trustworthiness.
(2) To determine whether the statement has particularized guarantees of trustworthiness under this section, the court shall consider, but is not limited to, the following factors:
(i) the child victim's personal knowledge of the event;
(ii) the certainty that the statement was made;
(iii) any apparent motive to fabricate or exhibit partiality by the child victim, including interest, bias, corruption, or coercion;
(iv) whether the statement was spontaneous or directly responsive to questions;
(v) the timing of the statement;
(vi) whether the child victim's young age makes it unlikely that the child victim fabricated the statement that represents a graphic, detailed account beyond the child victim's expected knowledge and experience;

In support of upholding the admission of the hearsay statements here, DSS claims that "under traditional principles of administrative law, an ALJ is encouraged to err on the side of admitting hearsay evidence, trusting the process of judicial review to weed out decisions that are not based on 'reliable' evidence." Because the testimony of Officer Witherspoon, Mrs. H., and Ms. Askew was subject to cross-examination by B.H., DSS argues that the legal standard for admitting the testimony was satisfied.[15]

■ B.H. points to the factors of Section 11–304(e) of the Criminal Procedure Article, arguing that the ALJ failed to apply them, thereby committing reversible error. The factors are restricted facially to hearsay statements offered "in a juvenile court proceeding or in a criminal proceeding." MD. CODE ANN., CRIM. PROC. § 11–304(b). This was a civil investigation and not a criminal case. In a contested case administrative proceeding, such as this one, hearsay "may not be excluded solely on the basis that it is hearsay." MD.CODE ANN., STATE GOV'T § 10–213(c).[16] Although the factors of Section 11–

---

(vii) the appropriateness of the terminology of the statement to the child victim's age;
(viii) the nature and duration of the abuse or neglect;
(ix) the inner consistency and coherence of the statement;
(x) whether the child victim was suffering pain or distress when making the statement;
(xi) whether extrinsic evidence exists to show the defendant or child respondent had an opportunity to commit the act complained of in the child victim's statement;
(xii) whether the statement was suggested by the use of leading questions; and
(xiii) the credibility of the person testifying about the statement.

15. B.H.'s counsel was at liberty to challenge the witnesses on any or all of the enumerated factors. "Control over the scope of cross-examination has traditionally been left to the discretion of the trial court unless there is a showing of prejudicial abuse of discretion. The rule may properly be applied in administrative hearings." *Commission on Medical Discipline v. Stillman*, 291 Md. 390, 422, 435 A.2d 747 (1981) (internal quotation and citation omitted).

16. The ALJ was not obligated to apply the rules of criminal procedure in this hearing. Similarly, "[w]hile administrative agencies are not bound to observe the technical common law rules of evidence, they are

304(e) do not apply strictly, they have been cited with approval for assisting an ALJ in determining what testimony to credit and in sifting through contradictory evidence. *See Montgomery County Dep't of Health & Human Servs. v. P.F.*, 137 Md.App. 243, 271, 768 A.2d 112 (2001) (reciting the factors and using them as guidelines in an administrative proceeding).

In the case of *Montgomery County Dep't of Health & Human Servs. v. P.F.*, 137 Md.App. 243, 768 A.2d 112 (2001), the administrative law judge used the Section 11–304(e) factors to assess whether the hearsay statements of a three year old were sufficiently reliable to be "considered credible evidence" because hearsay statements "inherently raise[ ] concerns about trustworthiness and reliability." *Id.* at 271–72, 768 A.2d 112. On review, the Court of Appeals recognized that the statutory factors "address[ ] the inherent questions of trustworthiness raised by such a young child's out of court statement and balance[ ] the need to protect child victims from the trauma of court proceedings with the fundamental right of the accused to test the reliability of evidence proffered against him or her." *Id.* at 272, 768 A.2d 112.

Like *P.F.*, application of the statutory factors was not compulsory here because "the proceedings did not involve a proceeding in court." *Id.* at 273, 768 A.2d 112. In that case and in this one, the statements were admissible under Section 10–213(c) of the State Government Article.[17] B.H. argues that

---

not prevented from doing so as long as the evidentiary rules are not applied in an arbitrary or oppressive manner that deprives a party of his right to a fair hearing." *Stillman*, 291 Md. at 422, 435 A.2d 747 (1981); *accord Fairchild Hiller Corp. v. Supervisor of Assessments*, 267 Md. 519, 524, 298 A.2d 148 (1973) (quoting *Dal Maso v. Bd. of Co. Comm'rs*, 238 Md. 333, 337, 209 A.2d 62(1965)) ("In general, administrative agencies are not bound by the technical common law rules of evidence, but they must observe the basic rules of fairness as to parties appearing before them.").

**17.** Section 10–213(c) says "[e]vidence may not be excluded solely on the basis that it is hearsay." *Accord Maryland Dep't of Human Resources v. Bo Peep Day Nursery*, 317 Md. 573, 595, 565 A.2d 1015 (1989) ("Hearsay which is inadmissible in a judicial proceeding is not per se inadmissible in an administrative proceeding.").

the *P.F.* case requires application of the Section 11–304(e) factors as a predicate to the admission of hearsay testimony in this case. The *P.F.* Court thought it was "appropriate for the ALJ to question whether the hearsay statement by this three year old was sufficiently reliable to be considered credible evidence." The fact that something is "appropriate" in one case does not make it obligatory in another. Although the *P.F.* Court found that "the ALJ was legally correct to make a threshold determination of trustworthiness by considering the factors identified in section [11–304(e) ]" the converse of that statement does not follow necessarily.[18]

▮▮▮▮▮ While it is true that in an administrative hearing testimony may not be excluded simply because it is hearsay, "[i]t is improper for an agency to consider hearsay evidence without first carefully considering its reliability and probative value." *Travers v. Baltimore Police Dep't,* 115 Md.App. 395, 413, 693 A.2d 378 (1997). "Even though hearsay is admissible, there are limits on its use." *Kade v. Charles H. Hickey School,* 80 Md.App. 721, 725, 566 A.2d 148 (1989). "The hearsay must be competent and have probative force." *Id.* "One important consideration for a hearing body is the nature of the hearsay evidence." *Travers,* 115 Md.App. at 413, 693 A.2d 378. "For instance, statements that are sworn under

---

**18.** B.H. argues that the ALJ completely failed to apply any of the factors. As proof, B.H. places emphasis in his brief on the statement of the ALJ that "if—if the [DSS] fails to establish that the child knows the difference between right and wrong, then that will go into my—decision on what weight to give any hearsay testimony. But it is admissible in these proceedings, and—and so I will allow it." Allowing the evidence was not error. The ALJ acted as empowered by Section 10–213(c) of the State Government Article. Further, in its memorandum opinion and order, the circuit court found that the ALJ correctly applied the factors in rendering her opinion. The factors noted by the circuit court include: factor (iii) any apparent motive to fabricate or exhibit partiality by the child victim, including interest, bias, corruption, or coercion; factor (vi) whether the child victim's young age makes it unlikely that the child victim fabricated the statement that represents a graphic, detailed account beyond the child victim's expected knowledge and experience; factor (ix) the inner consistency and coherence of the statement; and factor (xiii) the credibility of the person testifying about the statement. *See* MD.CODE ANN., CRIM. PROC. § 11–304(e).

oath, or made close in time to the incident, or corroborated [ ] ordinarily [are] presumed to possess a greater caliber of reliability." *Id.* "[M]ere uncorroborated hearsay or rumor does not constitute substantial evidence." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

As the record of the hearing reflects, Ms. Askew testified "having first been duly sworn." Ms. Askew's interviews followed in close temporal proximity from the alleged events. Brayden and Brianna were with B.H. on the evening of April 22, 2010. Ms. Askew interviewed them only five days later. Finally, the statements made to Ms. Askew by Mrs. H., Brayden, and Brianna are self-referential and corroborate each other. They are neither contradictory in a material[19] respect, nor are they internally inconsistent.

In the case of *Maryland Dep't of Human Resources v. Bo Peep Day Nursery,* 317 Md. 573, 565 A.2d 1015 (1989), the Court of Appeals identified four main dangers associated with statements made by a child testified to by a third person:

[f]irst, the content of the declarant's statement may be false. Secondly, an adult witness, either intentionally or unintentionally, may have inaccurately conveyed the declarant's statement to the decision maker. Third, the adult witness may have drawn an erroneous conclusion from the declarant's accurately reported statement. Fourth, the adult witness may have accurately communicated the declarant's statement, as far as it goes, but may have omitted other matter never explored, or deemed by the witness to be insignificant, but which would be significant to some other evaluator.

*Id.* at 599, 565 A.2d 1015. In *Bo Peep,* because "those who testified concerning statements made by the children were

---

19. B.H. raises a factual question about precisely how Brayden injured his arm. The ALJ resolved the testimony on this issue by finding, as fact, that "[w]hile running, Brayden hit his elbow on a table or a wall....". Whether Brayden ran into a table or a wall neither renders unreliable the balance of the ALJ's findings nor precludes the legality of the finding of indicated child abuse.

subject to cross-examination concerning the accuracy of their communication," the danger in admitting the statements was cured and they were properly considered by the hearing officer. *Id.* at 600, 565 A.2d 1015. In this case, B.H. had the opportunity to, and did, subject the testimony of Officer Witherspoon, Ms. Askew, and Mrs. H. to cross examination.

B.H. emphasizes that "the determination of whether a child is competent to testify is left to the sound discretion of the trial court." *Jones,* 68 Md.App. at 165, 510 A.2d 1091. Before such testimony is admitted, B.H. argues, "the court must at least conduct such an examination as will disclose the factual basis on which his conclusion as to competency rests." *Brandau v. Webster,* 39 Md.App. 99, 105–06, 382 A.2d 1103 (1978). But this case does not involve the admission of direct testimony from a child. In this case, the question is whether or not hearsay statements by children were admissible through a third party adult witness. We conclude that they were.[20] Because B.H. subjected the hearsay statements to cross examination, they were rendered "sufficiently reliable to be admissible in this administrative proceeding, whether or not some or all of the hearsay declarations of the children embodied within that testimony would have been admissible in a judicial proceeding." *Bo Peep,* 317 Md. at 589, 565 A.2d 1015.

*Additional Fact Finding*

B.H. next contends that the ALJ "erred by failing to make a specific finding of fact to establish that the location, nature or extent of the four-year-old child's alleged injury injured the child or placed the child at a substantial risk of harm. . . .". This Court, based on the administrative record, "must assess whether a reasoning mind could have reached"

---

**20.** Here, the ALJ "accept[ed] Biana's [sic] and Brayden's hearsay statements to the [ ] [DSS] investigator over the [a]ppellant's testimony and believe[d] that the [a]ppellant chased Brayden and forced food into his mouth." The Court of Appeals has held that such evidence "is admissible before an administrative body in contested cases and, indeed, if credible and of sufficient probative force, may be the sole basis for the decision of the administrative body." *Redding v. Board of County Comm'rs,* 263 Md. 94, 110–11, 282 A.2d 136 (1971).

the same decision as the ALJ did. *Vann,* 382 Md. at 299, 855 A.2d 313. B.H. submits that the ALJ made fact findings insufficient to "support a finding of indicated child abuse." B.H. argues that because the ALJ made insufficient findings of fact, and because the decision "can only be reviewed on grounds identical to those relied upon by the agency," we are constrained to reverse. *Doe,* 205 Md.App. at 55, 43 A.3d 1071.

B.H. identifies three findings that he alleges cannot support a finding of indicated child abuse: [21]

3. At dinner, Brayden refused to eat his spaghetti because there were mushrooms in the sauce. Brayden left the table without permission. The [a]ppellant chased after him, grabbed him, and brought him back to the table. The [a]ppellant then tried to force the child to eat.

4. While running, Brayden hit his elbow on a table or a wall and sustained a scratch. The [a]ppellant caused three bruises on Brayden's neck and a scratch under his chin when he grabbed the boy.

6. On April 23, 2010, [Mrs. H.] took Brayden to his pediatrician who documented a right elbow bruise, a scratch under his chin, and three superficial bruises in a row on Brayden's neck.

B.H. stresses that "[i]t is a necessary element of the act of child abuse for DSS to demonstrate, and the ALJ to find as a matter of fact, exactly *how* the nature, extent and location of the injury demonstrates that [Brayden] was harmed or placed at a substantial risk of harm." (emphasis added). A *how* clause is not explicit in the rule; regardless, DSS must show that the "nature, extent, and location of the injury indicate that the child's health or welfare was harmed or was at substantial risk of harm." COMAR § 07.02.07.12(A)(1)(d) (emphasis added). Although DSS places greater emphasis on the fact that B.H. force fed mushrooms to his son, the ALJ found satisfactorily that the "[a]ppellant caused three bruises

---

21. In total the ALJ made eight findings of fact. Findings # 3, # 4, and # 6 deal with Brayden's physical injuries.

on Brayden's neck and a scratch under his chin when he grabbed the boy." From the three cited findings of fact, the ALJ found that DSS met its burden. Brayden's three bruises and the scratch under his chin satisfy both the nature and extent requirements. The location is while running away from the dinner table, down a hall at B.H.'s home. The scene may have been painted more clearly, but error cannot be predicated on this ground.

B.H. cites *Turner v. Hammond*, 270 Md. 41, 310 A.2d 543 (1973) for the proposition that "[t]he Court of Appeals has rejected administrative decisions that rely only upon a recitation of the statutory criteria without making specific factual findings." In *Turner v. Hammond*, Turner attempted to secure a special use exception from a Salisbury zoning ordinance. The zoning board denied the exception by using a pre-printed check off form. The form listed a series of conclusions and then provided a box in which the preparer could check "will or will not," thereby indicating if the proposed development either would or would not have a certain impact on the community.

The zoning board was empowered "to judge whether the neighboring properties and the general neighborhood would be adversely affected" by the development project. *Montgomery County v. Merlands Club, Inc.*, 202 Md. 279, 287, 96 A.2d 261 (1953). The Court of Appeals found the "reasons given by the Board for denying the application suggest a rather cavalier attitude in respect of its duties and responsibilities. It made no findings of fact worthy of the name and we think citizens are entitled to something more than a boiler-plate resolution." *Turner*, 270 Md. at 55–56, 310 A.2d 543. The *Turner* Court recognized that the "record [was] utterly devoid of any evidence." *Id.* at 56, 310 A.2d 543. In conclusion, the court stated:

> We have said that substantial evidence is required to support the findings of the Board and that substantial evidence is more than a scintilla of evidence. All definitions of scintilla, at least in this context, are imprecise but if we assume it takes ten gossamers to make a scintilla then the

appellees' evidence before the Board falls well short of five gossamers.

*Id.* at 60, 310 A.2d 543 (internal citations omitted).

*Turner* is low tide on the high seas of administrative decision making. In the order here, the ALJ stated:

[i]n sum, Brianna's and Brayden's statements, the photographs, and the medical report are credible evidence, which the [a]ppellant did not satisfactorily refute, that: Brayden was injured; the [a]ppellant, his father, caused the injury; Brandon [sic] was four years old and a child; and Brayden's health or welfare were harmed by the scratches and bruises on his neck, and at substantial risk of harm given the comparative size and strength of Brayden and the [a]ppellant.

While this language tracks the regulatory requirements for a finding of indicated child abuse, *see* COMAR § 07.02.07.12 (2012), the case here distinguishes itself factually from *Turner.* In *Turner* an administrative body made insufficient factual findings, adopted a "cavalier attitude" and ultimately generated a record "utterly devoid of any evidence." *Turner,* 270 Md. at 56, 310 A.2d 543. The pre-printed check off form used by the zoning board rigidly framed the issues and, metaphorically at least, usurped the board's duty as fact finder. Ultimately, by following the form in rote, the board made "no findings of fact." *Id.* at 55–56, 310 A.2d 543.

We cannot conclude that this record is one "utterly devoid of any evidence." *Id.* The ALJ heard testimony, credited the testimony which persuaded her, and applied the law to the facts in order to uphold a finding of indicated child abuse. *Turner* defined substantial evidence as "more than a scintilla" *Id.* at 60, 310 A.2d 543. A record completely absent of evidence merited at most five gossamers; here, the ALJ's findings of fact, combined with the hearing testimony, rises to the level of eleven gossamers at least. Ten being sufficient, the ALJ has committed no error.

### A Parent's Right to Use Reasonable Physical Force in Disciplining a Child

 Section 4–501(b)(2) of the Family Law Article states that "[n]othing in this subtitle shall be construed to prohibit reasonable punishment, including reasonable corporal punishment, in light of the age and condition of the child, from being performed by a parent or stepparent of the child." B.H. argues that under *Anderson v. State,* 61 Md.App. 436, 487 A.2d 294 (1985), corporal punishment is legal as long as "the force [is] truly used in the exercise of domestic authority by way of punishing or disciplining the child—for the betterment of the child or promotion of the child's welfare—and [is] not [ ] a gratuitous attack." *Id.* at 444, 487 A.2d 294. "[C]hild abuse and reasonable corporal punishment are mutually exclusive; if the punishment is one, it cannot be the other." *Vann,* 382 Md. at 303, 855 A.2d 313. "When a court is deciding whether a particular parental discipline is child abuse, whether it be under CL § 3–601 or FL §§ 5–701 or 4–501, the court always determines whether the corporal punishment was reasonable." *Id.*

 B.H. argues that he "acted reasonably under the circumstances in trying to ensure that his four-year-old son sat at the dinner table and ate the mushrooms prepared with his dinner." [22] B.H. claims that he acted as "any responsible parent would have done in that situation and acted in a way to ensure his child returned to the dinner table." Although B.H. testified to the contrary, the ALJ found "that the [a]ppellant's contact with Brayden was not accidental or unintentional." Instead, the ALJ found that "[a]ppellant chased the boy, forced him back to the table and pressed food into his mouth.

---

**22.** Even if B.H. succeeded initially in proving the use of corporal punishment, "[a] finding of indicated child abuse may be appropriate when the evidence establishes that the child's parent imposed corporal punishment that left the child with an injury the nature, extent, and location of [which] indicate that the child's health or welfare was harmed or was at substantial risk of harm." *Dep't of Human Res. v. Howard,* 168 Md.App. 621, 643, 897 A.2d 904 (2006) (internal quotations omitted).

These are the actions of an angry or out-of-control person, not a parent imposing reasonable corporeal [sic] punishment." [23]

A reviewing court "should defer to the agency's fact-finding and drawing of inferences if they are supported by the record." *Motor Vehicle Admin. v. Shea,* 415 Md. 1, 14, 997 A.2d 768 (2010). Reviewing an agency decision in the light most favorable to it, "the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence." *Id.* The ALJ determined that B.H.'s actions in disciplining Brayden were unreasonable. That fact finding and the inferences therefrom are entitled to deference; such deference is warranted here.

"Generally, when the entire record shows that the findings of fact and conclusions of law are supported by competent, material and substantial evidence taken before the agency . . . it is the function of the court to affirm the order of the agency." *Bernstein v. Real Estate Com.,* 221 Md. 221, 230, 156 A.2d 657 (1959). On the record before us, the same as that before the ALJ, we conclude that "a reasoning mind reasonably could have reached the factual conclusion that the agency reached." *Eberle,* 103 Md.App. at 166, 652 A.2d 1175.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**23.** B.H. raises the issue of intent as a defense to the finding of indicated child abuse. Intent would be probative of a defense only after a finding that corporal punishment was administered. *See Dep't of Human Res. v. Howard,* 168 Md.App. 621, 642, 897 A.2d 904 (2006) (noting that "[a] finding of 'indicated child abuse' is not 'appropriate' when the evidence establishes that the child's parent imposed *corporal punishment* that left the child with an injury unless the nature, extent, and location of the injury indicate that the child's health or welfare was harmed or was at substantial risk of harm"). (emphasis added) (internal quotation omitted). Here, intent is irrelevant because the ALJ failed to make the predicate finding that B.H. used corporal punishment.